AO 106 (Rev. 06/09) Application for a Search Warrant

**FILED**

MAR 08 2022

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
for the
Northern District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*IPHONE CELLULAR TELEPHONE, IMEI 356716086402170, CURRENTLY LOCATED AT THE TULSA POLICE DEPARTMENT* | )<br>)  Case No. 22-MJ-145-JFJ<br>)<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
   See Attachment "A"

located in the  Northern  District of  Oklahoma , there is now concealed *(identify the person or describe the property to be seized)*:
   See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
   ☒ evidence of a crime;
   ☒ contraband, fruits of crime, or other items illegally possessed;
   ☐ property designed for use, intended for use, or used in committing a crime;
   ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1151, 1153, and 1111 | First Degree Murder in Indian Country |
| 18 U.S.C. §§ 1151, 1153, and 113(a)(1) | Assault with Intent to Commit Murder in Indian Country |
| 18 U.S.C. § 924(j)(1) | Causing Death by Using and Discharging a Firearm during a Crime of Violence |

The application is based on these facts:
   See Affidavit of Laura Tuteral, attached hereto.

   ☒ Continued on the attached sheet.
   ☐ Delayed notice of ___ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Laura Tuteral, FBI
*Printed name and title*

Sworn to before me by phone.

Date: 3/8/22

*Judge's signature*

City and state: Tulsa, OK

Jodi F. Jayne, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF IPHONE CELLULAR TELEPHONE, IMEI 356716086402170, CURRENTLY LOCATED AT THE TULSA POLICE DEPARTMENT IN TULSA, OKLAHOMA | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Laura M. Tuteral, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device (the "Target Device") —which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation, United States Department of Justice, and as such, I an investigative or law enforcement officer within the meaning of Title 18, United States Code 2510(7), and Title 21, United States Code, Section 878(a), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offense enumerated in Titles 18 and 21 of the United States Code. I have been a Special Agent with the Federal Bureau of Investigation since October 2014. Prior to being employed by the FBI, I served as a Federal Air Marshal for approximately four years. I received a Bachelor of Arts Degree in Criminal Justice and English with a Minor in Biology from Indiana University in 2008. As a Special Agent, I attended and completed the FBI

Academy in 2015. During this training, I received detailed academic and practical training in the areas of, but not limited to narcotics enforcement, drug identification, violent crime and gang investigations, and other law enforcement and investigative techniques. Following my formal training at the academy, I completed the National Homicide Investigators Course in New York City and was also trained as Evidence Response Team member and Assistant Team Leader. I am currently assigned to Tulsa FBI Resident Agency and work with the TPD Homicide Unit. My previous assignment was with the Newark FBI field office as a member of the Gang and Violent Crime squad where I investigated various violations of federal law and have participated in many investigations.

3. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on events that transpired in the Northern District of Oklahoma, in Indian Country and are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Since this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 1151, 1153, and 1111 (Murder in Indian Country), Title 18, United States Code, Section 1151, 1153, and 113(a)(1) (Assault with Intent to Commit Murder in Indian Country), and Title 18, United States

Code, Section 924(c)(1)(a)(iii) and 924(j)(1) have been committed by SIR MICHAEL MORGAN JR. There is also probable cause to search the item described in Attachment A for evidence, instrumentalities, and/or fruits of these crimes further described in Attachment B.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is a Black iPhone with no case, Cellular Telephone, IMEI 356716086402170, hereinafter the "Target Device." The Target Device is currently located at the Tulsa Police Department Property Room, 1111 West 17th Street, Tulsa, OK in the Northern District of Oklahoma.

6. The applied-for warrant would authorize the forensic examination of the Target Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. As part of this investigation, I have reviewed police reports prepared by the Tulsa Police Department Homicide Division as well as witness statements.

8. At all times relevant to this Complaint, the subject, SIR MICHAEL MORGAN JR, is a member of the Muscogee Creek Nation by blood and enrollment.

9. That the incident occurred on Johnston Avenue in Tulsa, Oklahoma, within the boundaries of the Cherokee Nation and the Northern District of Oklahoma.

10. Late on evening of January 29, 2022, MORGAN was in a shootout with 17-year-old A.F. and 19-year-old Isaiah Jones between 4923 and 4929 N. Johnston Avenue in Tulsa, Oklahoma.

11. Tulsa Police Department Homicide Detectives interviewed A.F. who stated he and Jones were visiting a friend, Lacurtis Hearn, at 4929 Johnston Avenue in Tulsa, Oklahoma, when they were met by MORGAN, a/k/a "Wink," and another young man outside the residence, identified as 16 y/o J.J. MORGAN and JJ. were next door in the yard at 4923 N. Johnston Avenue. MORGAN confronted Jones and A.F. about a previous shooting that they were linked to involving one of MORGAN's friends. MORGAN then produced a gun and a shootout occurred; MORGAN shot A.F. and Jones, and Jones returned fire and shot MORGAN.

12. When officers arrived at the scene, Morgan was inside 4923 N. Johnston Avenue with a 9mm pistol next to him. The weapon was collected, and MORGAN was transported to St. John's Hospital to be treated for two gunshot wounds. J.J. was not on scene when officers arrived, and we have not been able to locate or speak to him. A.F. and Jones were transported to the hospital by Lacurtis Hearn in a private vehicle prior to officers arriving on scene. Jones was pronounced dead at the hospital as a result of a gunshot wound. A.F. was shot in the face and lost an eye.

13. Cynthia Hearn, mother of Lacurtis Hearn and also an occupant of 4929 N. Johnston Avenue, said that on that night A.F. and Jones had knocked on their door asking to see Lacurtis Hearn. She told the two young men that she would go get Lacurtis, and then she shut the door and walked towards Lacurtis's room. While she was walking back to get Lacurtis she heard several loud noises that sounded like gunshots. She went back to open the front door and found that A.F. had been shot in the face and she called 911. Lacurtis came to the front of the house, picked up Jones and carried him outside to his car. A.F. appeared to have been shot in the face, and he got in the car too and Lacurtis drove both of them to the hospital.

4

14. MORGAN was interviewed at the scene by Tulsa Police Department Homicide Detectives on January 30, 2022. Morgan was calm and coherent but highly uncooperative and refused to give any information at the scene. MORGAN was recontacted at the hospital and stated he had just been released from a juvenile detention facility the day before and was present with his cousin, J.J., when the shooting occurred. MORGAN said he went to his mother's house at 4923 N. Johnston Avenue prior to the shooting and retrieved a gun from inside the house. The gun was the same 9mm pistol found by officers at the scene. MORGAN had a confrontation with Jones and A.F. and asked them about shooting his friend. He identified his friend as "E.J." full name Edward Lane. That confrontation occurred outside between the two residences. MORGAN stated that after the confrontation, A.F. started shooting and MORGAN was shot. MORGAN stated J.J. was the one who shot back at A.F. and Jones and then J.J. ran off. MORGAN initially stated that he never saw J.J. after the shooting and they never had contact with each other, however when confronted about the 9mm gun recovered next to him when the police arrived, MORGAN then changed his statement and stated that as J.J. ran off, J.J. threw the gun to MORGAN, who then caught it and placed it next to his person.

15. On February 21, 2022 Tulsa Police Department (TPD) Homicide Detective Maxwell Ryden reviewed the TPD Forensic Laboratory in reference to the casings and gun found on the scene. The 9mm Canik handgun found next to MORGAN matched the two projectiles recovered from JONES' body. The 9mm Canik handgun did not match 9mm casings that were recovered from the scene. The report indicates that two 9mm guns were fired during the incident.

16. 12. On February 22, 2022 TPD Detective Ryden reviewed the Canik handgun and seven (7) live cartridges located at the TPD property room. The magazine to the handgun was

5

capable of holding eighteen (18) rounds, therefore the gun had the capacity to hold up to nineteen (19) rounds, with one in the chamber and a full magazine. There were seven (7) rounds recovered from the handgun at the scene, allowing for twelve (12) possible fired rounds. Two (2) rounds were recovered from JONES' body.

17. TPD Detective Ryden searched prior Tulsa Police reports and discovered that Edward Lane, a/k/a "E.J." was shot on March 1, 2021.

18. That the suspect is identified as SIR MICHAEL MORGAN JR. He has a date of birth of XX/XX/2003 and the last four of his SSN is 5464. The defendant is a confirmed member by blood of the Muscogee (Creek) Nation. This crime occurred between 4929 and 4923 N. Johnston Avenue, Tulsa, Oklahoma, within the boundaries of the Cherokee reservation, within the Northern District of Oklahoma.

19. The Target Device was located at 4929 N. Johnstown Avenue, Tulsa, OK, a residence belonging to Cynthia Hearn, and where A.F. ran inside after being shot. Cynthia Hearn indicated that the phone belonged to A.F. The above-mentioned shooting occurred outside the residence.

20. There is probable cause to believe that the cell phone may belong to A.F., and will contain evidence of texts, calls, internet history, and/or emails that demonstrates his relationship with Jones and MORGAN. Additionally, it is likely that data on the cell phone will assist in establishing a timeline of events and could display any signs of intent. Photos and videos on the cell phone may also assist in the investigation. Further, it is reasonable to believe that other parties involved in the shooting may have been attempting to contact A.F. after the shooting occurred.

## TECHNICAL TERMS

1. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address

7

   so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

  c. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

  2. Based on my training, experience, and research, I know that the Target Device has capabilities that allow it to serve as a wireless telephone. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

  3. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

  4. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct

8

evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Target Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Target Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device to make electronic and/or telephonic threats, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

5. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

6. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

7. *Methods of examination.* In conducting this examination, law enforcement personnel may use various methods to locate evidence and instrumentalities of the Subject Offense, including but not limited to undertaking a cursory inspection of all information within the Target Device. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with e-mails, including attachments such as scanned documents, pictures, and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but do not contain any keywords that an agent is likely searching for.

## CONCLUSION

8. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Target Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Laura M. Tutera
Special Agent
Federal Bureau of Investigation

11

Telephonically subscribed and sworn to before me on:

_____
JODI F. JAYNE
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is a Black iPhone with no case, IMEI 356716086402170, hereinafter the "Target Device." The Target Device is currently located at the Tulsa Police Department property room, 1111 West 17th Street, Tulsa, Oklahoma. This warrant authorizes the forensic examination of the Target Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.  All records on the Target Device described in Attachment A that relate to violations of Title 18, United States Code, Section 1151, 1153, and 1111 and Title 18, United States Code, Section 1151, 1153, and 113(a)(1), between February 1, 2021, and February 25, 2022, including:

    a. Evidence of user attribution showing who used or owned the Target Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phone books, saved usernames and passwords, documents, and browsing history;

    b. Records and information relating to geolocation and travel in furtherance of the Subject Offense;

    c. Records relating to communication with others as to the criminal offense above; including incoming and outgoing voice messages; text messages; multimedia messages; applications that serve to allow parties to communicate; all call logs; secondary phone number accounts, including those derived from Skype, Line 2, Google Voice, and other applications that can assign roaming phone numbers; and other Internet-based communication media;

    d. Threatening communications related to the Subject Offense;

    e. Records relating to documentation or memorialization of the criminal offense above, including voice memos, photographs, videos, and other audio and video media, and all EXIF information and metadata attached thereto including device

information, geotagging information, and information of the relevant dates to the media;

f. Records relating to the planning and execution of the criminal offense above, including Internet activity, including firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, records of user-typed web addresses, account information, settings, and saved usage information;

g. Application data relating to the Subject Offense;

h. All records and information related to the coordination, agreement, collaboration, and concerted effort of and with others to violate the Subject Offense

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.